

FILED

APR 11 2022

Clerk, U.S. District Court
Eastern District of Tennessee
At Knoxville

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

ERIK COOPER ⟩

⟩ No. 3:22-cv-124

**Plaintiff,** ⟩ Corker / McCook

⟩

**v.** ⟩

⟩

BLUM COLLINS, LLP, ⟩

STEVEN AARON BLUM, and ⟩

CRAIG MICHAEL COLLINS, ⟩

⟩

**Defendants.** ⟩

---

## COMPLAINT

---

Plaintiff, Erik Cooper, brings this action against the Defendants, Blum Collins, LLP ("Blum Collins"), Steven Aaron Blum ("Blum"), and Craig Michael Collins ("Collins") (collectively, "Defendants"). For his claims, Plaintiff would state as follows:

### I.    NATURE OF ACTION

1.    This action involves the concerted efforts of a boutique California law firm and two of its partners to deprive Plaintiff, Erik Cooper ("Cooper"), a court-qualified risk management and insurance expert and litigation consultant, of his lawful payment due for services rendered and

expenses incurred while providing services requested, directed and supervised by the collective Defendants.

2. Cooper has been employed in the risk management and insurance industry for more than 30 years. Cooper has served clients in both litigated and non-litigated commercial property and casualty insurance matters. Cooper has also served clients as a litigation consultant in complex mass tort civil litigation matters. Cooper is the owner and operator of Acuity Consulting Services ("Acuity"), a private risk management and litigation consulting practice.

3. In December 2018, Cooper met with Blum and Collins at their request to solicit Cooper's expertise and assistance with a mass tort civil litigation matter. Cooper later phoned Blum and Collins from Cooper's Sevier County, Tennessee office and reached a verbal agreement with Blum and Collins for Cooper to provide the Defendants, individually and collectively, their business affiliates, their clients and their potential clients consulting services in two general categories: claims consulting and litigation consulting. The parties' agreement provided for Cooper to receive compensation at a rate of $700.00 per hour for these services, and reimbursement of Cooper's expenses incurred for or on behalf of the Defendants, their business affiliates, their clients and their potential clients.

2

4.     During the period beginning on January 1, 2019 and ending on August 1, 2019, Cooper relied upon the parties' verbal agreement and began providing claims consulting and litigation consulting services for the Defendants as requested, directed and supervised by Blum and Collins. Cooper's professional services included, among other services, Cooper representing the Defendants as their third-party consultant engaged by the Defendants to investigate and document the Defendants' clients' losses, to calculate the Defendants' clients' damages, and to advise the Defendants, their employees and their business partners, among other services. Cooper incurred expenses while providing these services requested, directed and supervised by the Defendants and their employees. Cooper regularly engaged with Blum, Collins, Blum Collins' employees, Defendants' colleagues and affiliates, and the Defendants' clients and potential clients without interruption for a period of seven months.

5.     After engaging Cooper to provide claims consulting and litigation consulting services, Blum, Collins and Blum Collins requested Cooper expand his work to include a third category of services: marketing. The Defendants desired to increase the number of plaintiffs the Defendants represented in a mass tort civil litigation matter to compete with other lawyers and law firms for appointment by the court as "lead counsel."

3

These marketing services included, without limitation, client sourcing, promotion of the Defendants to potential clients and business partners, seeking advertising and promotional opportunities, and production of media stories requested, orchestrated and directed by Blum and Collins and published by *The Local Malibu*. The Defendants acquired clients from these services. For Cooper's marketing services, Cooper and the Defendants verbally agreed to compensate Cooper at the same rate of $700.00 per hour, however, Cooper's compensation for marketing services rendered was subject to a contingency that Cooper's total fees not exceed ten percent (10%) of Blum Collins' attorneys' fees earned from clients referred to the Defendants by Cooper. The Defendants also agreed to fund a $25,000.00 expense retainer deposit for Cooper's anticipated expenses traveling from Sevier County, Tennessee to California to provide these marketing services.

6. In January 2019, Cooper requested the Defendants enter into a written contract defining the terms and conditions of the parties' agreement for all services. The Defendants, both individually and collectively, refused. Instead, Blum and Collins asked for Cooper to prepare a proposal letter outlining general terms and conditions of the parties' verbal agreements for marketing services only.

7.     On January 22, 2019, the parties executed a proposal letter for marketing services only requiring execution of "a written agreement within ninety (90) days to occur on or before March 30, 2019." The parties never executed any written agreement as required by the parties' proposal letter.

8.     The Defendants funded Cooper's expense retainer deposit in the amount of $25,000.00 on or about January 22, 2019.

9.     Cooper incurred expenses while providing marketing services requested, directed and supervised by the Defendants and their employees.

10.     Cooper regularly engaged with Blum, Collins, Blum Collins' employees, Blum Collins' colleagues and business affiliates, and Blum Collins' clients and potential clients without interruption for seven months.

11.     The Defendants, their business affiliates, their clients and their potential clients received claims consulting services, litigation consulting services, and exclusive marketing services from Cooper and his associates. The Defendants regularly engaged with Cooper during this time period, requested assistance from Cooper, and directed, supervised and complimented Cooper's work.

12.     To facilitate their scheme, Blum and Collins, acting for and on behalf of themselves, as individuals, and for and on behalf of Blum Collins, conspired together to defraud Cooper from payment for any services the

Defendants received and from reimbursement for expenses Cooper incurred for or on behalf of the Defendants and each of them, while reaping monetary benefits for themselves from the services provided and from the expenses incurred by Cooper on the Defendants', their clients', and their prospective clients' behalf.

13. In June 2019, after Cooper executed a directive given to him by Blum and Collins, the Defendants suddenly ceased all communications with Cooper for all services, leaving Cooper's requests for further directions and requisite cooperation with the Defendants unanswered, and altogether abandoning the Defendants' relationship with Cooper. Blum Collins' employee would later inform Cooper that after Cooper executed Blum's and Collins' directive to contact The Honorable Judge William F. Highberger ("Judge Highberger"), the Defendants chose to "distance themselves" from Cooper and utterly ceased all direct contact and communications with him.

14. On August 1, 2019, with the Defendants still remaining silent, Cooper concluded all services offered for or on behalf of the Defendants. During the parties' engagement, Cooper provided more than 1,094 hours of professional services to the Defendants, their employees, their business affiliates, their clients and their potential clients, and incurred $766,080.00 of invoices for professional services rendered and $27,522.60 of expenses

incurred.

15.     On August 30, 2019, Cooper transmitted Acuity's invoice, service statement, expense statement, and expense itemization report (collectively, "Invoice") to the Defendants.  Cooper's Invoice totaled $768,602.60.[1]  The Defendants offered no response and no payment.

16.     Nearly five months later, on January 25, 2020, Cooper again transmitted his Invoice to the Defendants for payment of Cooper's services and expenses.  Again, the Defendants gave no response and no payment.

17.     The Defendants have paid nothing for Cooper's service fees or expenses for claims consulting services.

18.     The Defendants have paid nothing for Cooper's service fees or expenses for litigation consulting services.

19.     The Defendants have paid nothing for Cooper's service fees or expenses for marketing services.

20.     In November 2020, the Defendants transmitted a letter to Cooper and acknowledged owing Cooper $3,672.00 for marketing services received, but still made no payment to Cooper.

---

1     Cooper's Invoice incorporated all fees and expenses for each of three categories of services provided:  claims consulting, litigation consulting, and marketing. Cooper's expenses were reduced by Blum Collins' expense retainer deposit of $25,000.00 Cooper received for marketing expenses.

21.    The Defendants received monetary and other benefits from services provided by Cooper, but have altogether failed to remit any compensation to Cooper for services provided or expenses Cooper incurred.

22.    The Defendants have falsely maintained that Cooper never actually provided any services or incurred any expenses for the Defendants, their clients or their potential clients and, therefore, is not entitled to any compensation or expense reimbursement claimed due.  Cooper's 61-page Invoice detailing services provided and expenses incurred for the Defendants defies the Defendants' false beliefs.

23.    Cooper's agreement with Blum and Collins was a valid and enforceable contract.  Cooper performed his part of the agreement, and the Defendants received and continue to receive substantial monetary benefit from Cooper's services.  After receiving Cooper's services, the Defendants failed to perform their end of the bargain, materially breaching their agreement with Cooper by failing to remit payment for Cooper's services and expenses, much less the $3,672.00 acknowledged by the Defendants in their November 2020 letter.  By the Defendants' breach of the agreement, Cooper has suffered damages, the amount of which will be determined at trial.

## II.   JUSRISDICTION AND VENUE

24.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of two different states.  Plaintiff Cooper is a citizen and resident of Sevier County, Tennessee.   Defendant Blum Collins is a limited liability partnership organized under the laws and regulations of the state of California. Defendant Blum is a citizen and resident of Los Angeles County, California.   Defendant Collins is a citizen and resident of Los Angeles County, California.

25.    Venue is proper in this Court because Plaintiff Cooper resides in Sevier County, Tennessee, the agreement breached by the Defendants was made and entered into in Sevier County, Tennessee, and the Plaintiffs' damages occurred in Sevier County, Tennessee.

## III.   PARTIES

26.    Plaintiff, Erik Cooper, is a citizen and resident of Sevier County, Tennessee, residing in the city of Gatlinburg.

27.    Defendant, Blum Collins, LLP ("Blum Collins"), headquartered in Los Angeles, California, is a boutique law firm litigating large, high profile real estate, business and serious personal injury cases

9

in California.[2] Blum Collins operates as a limited liability partnership under the laws and regulations of the state of California. Blum Collins may be served through its Registered Agent, Craig Michael Collins, at 707 Wilshire Boulevard, Suite 4880, Los Angeles, California, 90017.[3]

28.    Defendant Steven Aaron Blum ("Blum") is a citizen and resident of Los Angeles, California. Blum is an attorney licensed by the State Bar of California. Blum is a partner in Blum Collins, LLP. Blum may be served at 707 Wilshire Boulevard, Suite 4880, Los Angeles, California, 90017.

29.    Defendant Craig Michael Collins ("Collins") is a citizen and resident of Los Angeles, California. Collins is an attorney licensed by the State Bar of California. Collins is a partner in Blum Collins, LLP. Collins may be served at 707 Wilshire Boulevard, Suite 4880, Los Angeles, California, 90017.

---

2    Source:  https://www.blumcollins.com; https://www.blumcollins.com/practice

3    For the purposes of this Complaint, "Blum Collins" means Blum Collins, LLP, a limited liability partnership under the laws of the state of California, and Blum Collins Ho, LLP, a limited liability partnership under the laws of California.

## IV. FACTUAL ALLEGATIONS

30. On or about November 8, 2018, the Woolsey Fire destroyed 96,949 acres of Los Angeles and Ventura counties in California, killed three, triggered the evacuation of more than 295,000 people,[4] and caused billions of dollars in economic damages ("Woolsey Fire"). At least 1,600 houses and businesses were damaged or destroyed by fire, including the residences of celebrities Denise Richards, Robin Thicke, Kim Basinger, Miley Cyrus, Liam Hemsworth, Neil Young and others. Lawyers for Woolsey Fire victims filed civil litigation seeking recovery for their clients' damages.

31. On or about November 19, 2018, Blum Collins, on behalf of their clients, commenced a class action lawsuit in the Superior Court of California for the County of Los Angeles styled *Rudolph Saldamando, D.D.S., et. al. v. Southern California Edison Company, et. al.*, case number 18STCV05485, alleging inverse condemnation, public nuisance, private nuisance, trespass, violation of public utilities code section 2106, violation of health & safety code section 13007, negligence, negligent interference with prospective economic advantage, and premises liability.

---

4      Source: https://en.wikipedia.org/wiki/Woolsey_Fire

Case 3:22-cv-00124-DCLC-JEM   Document 1   Filed 04/11/22   Page 11 of 38   PageID #: 11

32. In December 2018, Cooper was introduced to Blum and Collins by a mutual contact employed by WorldClaim, a public claim adjusting firm. Cooper, the collective Defendants, and the WorldClaim representative discussed a potential affiliation of the parties to collaborate together for the mutual benefit of each respective party.

33. Blum and Collins represented to Cooper that they had authority to contract with Cooper on Blum Collins' behalf.

34. The Defendants expressed to Cooper their interest in hiring Cooper to provide claims consulting and litigation consulting services for the Defendants, their affiliated business partners, and their clients.

35. In late-December 2018, Cooper reached an agreement with Blum and Collins to provide claims consulting and litigation consulting services for the Defendants, their business affiliates, and their clients. Blum, Collins, and Cooper agreed verbally by telephone that Cooper would receive $700.00 per hour for these services, billed in increments of one-tenth of each hour. Blum, Collins and Cooper agreed that the Defendants would reimburse Cooper for his expenses incurred while conducting business for or on behalf of the Defendants, their business affiliates and their clients. Blum, Collins and Cooper agreed that Cooper would maintain time calculations and descriptions of his work performed and expenses incurred,

and submit Cooper's Invoice to Blum Collins upon conclusion of Cooper's services.

36.     Cooper began providing claims consulting services for the collective Defendants in January 2019 under the parties' verbal agreement. Cooper investigated the Defendants' property losses as assigned to Cooper by the Defendants and their employees, participated in meetings with the Defendants' business partners (e.g., WorldClaim), itemized and valued the Defendants' clients' structural and personal property contents damages, advised the Defendants and their clients' on claim reporting, damage calculations, insurable losses, policy analysis, and settlement negotiations, and assisted the Defendants and their clients in various claims matters.

37.     Cooper began providing litigation consulting services for the collective Defendants in January 2019 under the parties' verbal agreement. Cooper regularly met by telephone and in-person with the Defendants, their employees, business colleagues and affiliates, investigated the source of the Woolsey Fire catastrophe to identify causation, identified potential defendants liable for causation of the Woolsey Fire, developed litigation strategies in consultation with Blum, Collins, and Blum Collins' employees, colleagues and affiliates, aided the Defendants in their competition with other lawyers and law firms for appointment by the court as "lead counsel"

in the Woolsey Fire Mass Tort Litigation matter, and assisted the Defendants and their employees, colleagues and affiliates in various litigation matters.

38.     Blum and Collins expressed to Cooper the Defendants' urgency to solicit Woolsey Fire victims as potential new clients for the Defendants. Blum and Collins alleged other lawyers and law firms were expeditiously acquiring Woolsey Fire victims as clients and actively competing for appointment by the court as "lead counsel" in the coordinated Woolsey Fire Mass Tort Litigation matter filed in the Los Angeles County Superior Court under case number JCCP 5000 and assigned to Judge William F. Highberger ("Judge Highberger"). Blum and Collins told Cooper that such appointment as "lead counsel" would afford the Defendants greater authority over orchestration of the Woolsey Fire litigation and greater compensation for the Defendants.

39.     Blum and Collins asked Cooper to add a third category of services for the Defendants: marketing. Blum and Collins asked Cooper to market the Defendants to Woolsey Fire victims as potential clients. Blum and Collins requested Cooper provide the Defendants exclusive marketing services including, without limitation, Cooper coordinating and conducting numerous claim workshop events in Los Angeles and Ventura counties for Woolsey Fire victims, with Blum, Collins, and Blum Collins employees,

individually and collectively, in attendance at those engagements and with the intent for the Defendants to solicit and engage attendees to become the Defendants' clients.

40. Blum, Collins, and Cooper agreed verbally by telephone that Cooper would receive the same $700.00 per hour for his marketing services, however, Cooper agreed to defer collection of any payment due Cooper until successful conclusion of Blum Collins' clients' legal cases, and to limit Cooper's compensation for marketing services to ten percent (10%) of the Defendants' attorneys' fees. Blum, Collins, and Cooper agreed that Cooper would maintain time calculations and descriptions of his work performed and expenses incurred, and submit Cooper's invoice to Blum Collins upon conclusion of Cooper's services. Blum, Collins and Cooper agreed that Cooper would be reimbursed for his expenses incurred providing these services for and on behalf of Blum Collins, its clients and prospective clients. Blum Collins provided Cooper an expense retainer deposit in the amount of $25,000.00 as an advance to compensate Cooper's anticipated expenses.

41. Cooper began providing marketing services for the collective Defendants in January 2019 under the parties' verbal agreement. Cooper attended numerous community workshops, meetings and other public

gatherings in California of Woolsey Fire victims to solicit potential clients for the Defendants. Cooper sourced and proposed advertising opportunities for the Defendants, researched, investigated and wrote eight stories for the Defendants' benefit with each published in *The Local Malibu*, searched for venues to host claim workshop events for Woolsey Fire victims, attended numerous meetings with Blum, Collins, and with Blum Collins employees, colleagues, business affiliates and clients in Blum Collins' offices, libraries, bars, dining establishments, and other venues.

42. Blum and Collins requested, directed and supervised all services provided by Cooper.

43. Cooper provided the majority of services for the Defendants from Sevier County, Tennessee. Cooper also provided services for the Defendants within Blum Collins' Los Angeles, California office and at Blum Collins' client residences and business offices located in Malibu and Calabasas, California.

44. On or about January 19, 2019, Cooper transmitted a proposal letter to Blum and Collins to codify the partial terms and conditions of the parties' verbal agreement for marketing services only. Blum and Collins revised the proposed terms and conditions of Cooper's proposal letter and demanded inclusion of specific language drafted by Blum and Collins.

16

The Defendants executed the revised proposal letter containing the language demanded by the Defendants. The proposal letter, in part, required execution of "a written agreement within ninety (90) days to occur on or before March 30, 2019". The parties never entered into any written agreement.

45.     The Defendants never intended to codify the parties' verbal agreement in writing. The Defendants intended to defraud Cooper of any compensation or expense reimbursement due for Cooper's services provided for, on behalf of and at the request, under the direction and supervision of the Defendants.

46.     Upon reliance of the parties' agreement, Cooper provided services for the Defendants without interruption for seven months.

47.     In January 2019, Blum and Collins introduced Cooper to Blum Collins' employee, attorney John Torbett ("Mr. Torbett"). Blum and Collins directed Cooper to work with Mr. Torbett in Blum Collins' Woolsey Fire matters. Cooper collaborated with Mr. Torbett regularly during the parties' seven month engagement, evidenced by hundreds of documented telephone calls, text and email messages, business meetings, client meetings and other records maintained by Cooper.

48.     In January 2019, Cooper coordinated and attended a dinner meeting with celebrity Denise Richards ("Ms. Richards") and Richards'

husband, Aaron Cameron Phypers ("Mr. Phypers"), in Malibu, California for the purposes of introducing Blum, Collins, and Mr. Torbett to Ms. Richards and Mr. Phypers. This introduction led to Ms. Richards and Mr. Phypers hiring Blum Collins to provide legal services for Ms. Richards' and Mr. Phypers' Woolsey Fire losses. Independently, Ms. Richards and Mr. Phypers also employed the Defendants to provide legal representation for Ms. Richards and Mr. Phypers in two independent landlord dispute matters involving Ms. Richards' and Mr. Phypers' two rented properties in Malibu ("Malibu Landlord Dispute") and Calabasas ("Calabasas Landlord Dispute"), California, respectively. Cooper was solely responsible for introducing the Defendants to Ms. Richards and Mr. Phypers, resulting in the Defendants receiving economic and celebrity endorsement benefit from their affiliation with Ms. Richards and Mr. Phypers.

49. The Defendants received compensation from Ms. Richards and Mr. Phypers for the Malibu Landlord Dispute and Calabasas Landlord Dispute matters. Collins and Blum Collins have each acknowledged that Cooper is entitled to compensation for Cooper's services, but Blum Collins offered Cooper only $3,672.00 for his marketing services. Defendants have paid Cooper nothing for services provided at the Defendants' requests and under the Defendants' direction and supervision, or for Cooper's expenses

incurred in Ms. Richards' and Mr. Phypers' Malibu Landlord Dispute and Calabasas Landlord Dispute civil matters.

50.     Cooper met with political leaders and business representatives in California and in Sevier County, Tennessee at the request and under the direction and supervision of Blum, Collins, and by extension, Mr. Torbett for Blum Collins, to provide marketing services for the Defendants.

51.     Cooper was directed by the Defendants to aide and assist each assigned client of Blum Collins with the preparation of the client's insurance and legal claims, to aide and assist Blum Collins' clients in preparing, reporting, managing and resolving their insured losses including, without limitation, introducing Blum Collins' clients to public claims adjusting firms (*e.g.,* WorldClaim), to prepare Blum Collins' clients' loss statements to quantify damages incurred for pursuit in civil litigation by the Defendants for their clients, and to offer the Defendants additional claims consulting, litigation consulting and other services, as requested, to aide and assist the Defendants' business interests related to the Woolsey Fire catastrophe.

52.     During Cooper's engagement with the Defendants, Cooper delivered claims consulting, litigation consulting, and exclusive marketing services to the Defendants by and through Cooper's introductions of the Defendants to potential clients affected by the Woolsey Fire catastrophe,

and to political leaders including, without limitation, Malibu mayor-elect pro tempore Bruce Silverstein.

53. Cooper's services were provided at the direction, instruction and guidance of Blum, Collins, and Mr. Torbett for Blum Collins.

54. Cooper is a published writer. At Blum's and Collins' request, Cooper provided services for the Defendants as a writer creating stories for publication in *The Local Malibu* to source clients for Blum Collins. Cooper investigated and researched eight stories, wrote seven stories, and *The Local Malibu* published six stories in 2019. Cooper's stories were requested, orchestrated and directed by Blum, Collins, and Mr. Torbett for Blum Collins, with Blum offering content, notes and his own previously-published writings for Cooper's solicitation for publication, and with Blum, Collins and Mr. Torbett each complimenting Cooper's published works. Cooper received no compensation or benefit for investigating, researching or writing these stories for the Defendants.

55. Cooper's services provided for and on behalf of the Defendants are detailed in Cooper's 61-page Invoice.

56. In July 2019, Mr. Torbett advised Cooper of his intent to leave his employment with Blum Collins, citing frustration with Blum and Collins, individually, Blum's and Collins' breach of their agreement with

Mr. Torbett, a lack of direction and execution of decisions by Blum and Collins, individually, and a storage closet assigned to Mr. Torbett as an office by Blum and Collins within the Blum Collins boutique law firm.

57. On August 1, 2019, Cooper voluntarily terminated all services provided for or on behalf of the Defendants, their employees, their colleagues and business affiliates, and their clients due to the Defendants' individual and collective abandonment of all communications with Cooper following Cooper's execution of contact with the court (Judge Highberger) as directed by Blum and Collins, respectively.

58. In August 2019, Cooper attended a business dinner meeting with Mr. Torbett in Santa Monica, California and learned from Mr. Torbett that Blum and Collins did not intend to pay Cooper for his services or his expenses incurred, citing concern for "fallout" resulting from Cooper's contact with the court (Judge Highberger) by request and at the direction of Blum and Collins, individually and collectively, to affect the court's decision in appointing lead counsel in the Woolsey Fire Mass Tort Litigation matter consolidated in the Los Angeles County (California) Superior Court under case number JCCP 5000 by seeking to disqualify competitive law firm Quinn Emanuel and advancing Blum Collins' candidacy for appointment as lead counsel themselves.

59. On August 31, 2019, with still no response received from the Defendants, Cooper transmitted to the Defendants his notice of termination by letter correspondence. Cooper transmitted therewith copy of Cooper's Invoice for payment of Cooper's services and expenses in the amount of $768,602.60.

60. For months thereafter, Cooper received no communication or payment from the Defendants for services provided or expenses incurred.

61. On January 25, 2020, Cooper transmitted email correspondence and a second copy of the Invoice to the Defendants for payment, with a copy of the Invoice also transmitted to the Defendants via U.S. Postal Service first class mail. Cooper again received no response.

62. On or about October 19, 2020, following more than one year of total silence from the Defendants in response to Cooper's notice of termination and Invoice, Cooper filed a notice of lien in Blum Collins' *Saldamando* case.

63. After receiving copy of Cooper's *Saldamando* lien notice, Collins and Blum Collins contacted Cooper by letter dated November 20, 2020 and, for the very first time, the Defendants responded to Cooper's Invoice transmitted to the Defendants more than one year earlier ("Defendants' Letter"). Defendants' Letter alleged an "apparent

misunderstanding" and offered Cooper $3,672.00 as compensation due Cooper for Cooper's services provided for the Ms. Richards' and Mr. Phypers' collective civil litigation matters. The Defendants' Letter also advised Cooper of Blum Collins' intent to initiate arbitration of the parties' dispute.

64. In the Fall of 2020, Mr. Torbett advised Cooper that the Defendants had also cheated Mr. Torbett of compensation he was due under his agreement with the Defendants.

65. The Defendants, it seems, have a pattern of not paying obligations due their employees, vendors, partners, and other service providers. The Defendants also seem to have an issue with honesty, transparency and truthfulness. In 2014, Defendant Blum Collins was found liable for its own professional negligence in a legal malpractice lawsuit and left without $7 million of insurance coverage due to Defendant Blum Collins' "material misrepresentation in its [insurance] policy application", as the federal court concluded.[5]

66. In November 2020, Blum Collins initiated arbitration of its dispute with Cooper, demanding repayment of Blum Collins' $25,000.00

---

[5] *Blum Collins, LLP, et. al. v. NCG Professional Risks, Ltd., et. al.*, No. 2:12-cv 08996 (C.D. Cal, July 31, 2014). See, also, https://www.lexology.com/library/ detail.aspx?g=2aadf7b6-f888-441a-baa7-677ddd8307ed

expense retainer deposit issued to Acuity in January 2019. Blum Collins filed its demand for arbitration with the American Arbitration Association, naming Erik Cooper as an individual, and Cooper's business, Acuity Consulting Services ("Acuity"). On Cooper's motion, the arbitrator dismissed Cooper from the arbitration. In December, the arbitrator awarded Blum Collins $33,831.25 for Acuity's return of Blum Collins' $25,000.00 expense retainer deposit, and $8,831.25 for the arbitrator's fee. The parties did not arbitrate Cooper's Invoice.

67. The Defendants, and each of them, requested, supervised, directed, orchestrated, instructed, and governed all services provided by Cooper during the parties' business together including, without limitation, Cooper's contact with Judge Highberger as a writer for *The Local Malibu* as requested, directed and orchestrated by Blum and Collins, Cooper's work with the Defendants' colleagues and business affiliates, Cooper's work with social media groups and political figures including WorldClaim and Bruce Silverstein's[6] Facebook social media group, Cooper's client sourcing and marketing efforts for benefit of the Defendants, and Cooper's activities provided for and on behalf of Blum Collins.

---

6    Bruce Silverstein was not an elected official in 2019. Bruce Silverstein was
     a private citizen and community organizer of Woolsey Fire victims in 2019.

68.     Blum, Collins, and Blum Collins' employees John Torbett, Gary Ho, and various paralegals, as well as Blum Collins' affiliated colleague, attorney Timothy R. Lee, requested Cooper's claims consulting expertise in handling their clients' catastrophic property loss claims, relied upon Cooper's unique knowledge of mass tort litigation involving wildfire catastrophes, and solicited Cooper's assistance with the Defendants' marketing efforts.

69.     All services were documented in Cooper's Invoice recording numerous meetings and events Cooper organized and attended, and numerous telephone, text and email communications exchanged between the Defendants, their employees, agents and representatives and Cooper.

70.     Upon information and belief, Blum Collins has settled some of its clients' legal cases. The Defendants have failed to remit any compensation due Cooper for his professional services rendered or expenses incurred for and on behalf of the Defendants.

71.     The Defendants and each of them intentionally sabotaged their business relationship with Cooper by and through their actions involving Judge Highberger, among other actions and inactions of the Defendants. The Defendants manipulated Cooper to act as their agent in violation of the Rules of the California State Bar and offense to the court.

72.     In their scheme, the Defendants and each of them conspired to defraud Cooper of any remuneration for his services rendered or expenses incurred for work Cooper performed for or on behalf of the Defendants, their colleagues and business affiliates, their clients and potential clients.

73.     The Defendants, and each of them, abandoned their business relationship with Cooper by ceasing all communications with Cooper and by breaching their duties and obligations owed to Cooper (*e.g.*, scheduling claim workshop meeting events).  This abandonment, cessation and breach caused Cooper to suffer economic damages.

74.     Neither Blum, Collins nor Blum Collins have abided by the terms of their agreement with Cooper, and have, upon information and belief, unlawfully deprived Cooper of compensation Cooper is due for his services provided and expenses incurred.

## V.     CLAIMS FOR RELIEF

### COUNT ONE

### BREACH OF CONTRACT

75.     Plaintiff repeats, as if stated verbatim, each of the foregoing allegations with the same force and effect as if fully set forth herein.

26

76.     To facilitate their arrangement for claims consulting, litigation consulting and marketing services, Blum and Collins, individually and acting on behalf of Blum Collins, made the following promises to Cooper:

- Cooper would provide claims consulting services for Blum, Collins, and Blum Collins, for the Defendants' colleagues and business affiliates, and for the Defendants' clients and prospective clients;

- Cooper would provide litigation consulting services for Blum, Collins, Blum Collins, and for the Defendants' colleagues and business affiliates, with reliance upon Cooper's unique expertise with catastrophic property and casualty claim losses and mass tort civil actions involving wildfire catastrophes;

- Cooper would provide exclusive marketing services for Blum, Collins, and Blum Collins to obtain new clients and increase Blum Collins' number of plaintiffs in the Woolsey Fire Mass Tort Litigation allowing Blum Collins to compete for selection by Judge Highberger as "lead counsel" with a competitively large number of plaintiffs represented;

- Cooper would provide other additional services as the request of Blum, Collins, and the employees, agents, colleagues and business affiliates of Blum Collins, including, attorney Timothy R. Lee, WorldClaim, and others;

- Cooper would receive compensation in the amount of $700.00 per hour, billed in increments of one-tenth of each hour, for all services provided to Blum, Collins, Blum Collins, and their colleagues, associates, clients and potential clients;

- Cooper would receive reimbursement of all expenses incurred for or on behalf of Blum, Collins, Blum Collins, and their colleagues, associates, clients and potential clients during the course of the parties' engagement;

27

- ■ Cooper would defer payment for marketing services only until receipt of settlement or judgment funds by Blum Collins;

- ■ Cooper's compensation for marketing services would not exceed ten percent (10%) of attorneys' fees received by Blum, Collins, or Blum Collins.

77. The parties entered into a mutually beneficial agreement. Cooper is entitled to compensation for his time at an hourly rate of $700.00 per hour for all professional services rendered, and reimbursement of all expenses Cooper incurred for or on behalf of Blum, Collins, Blum Collins, their employees, colleagues, business affiliates, clients or potential clients.

78. Construing the agreement as a whole, along with the parties' course of dealing over the seven-month engagement, the purpose of Cooper's agreement with the Defendants and the Defendants' funding of Cooper's expense retainer deposit was to provide specified responsibilities and benefits to Cooper and the Defendants.

79. Cooper fully performed, in all respects, his obligations under the agreement.

80. The Defendants, and each of them, have materially breached the agreement by, among other things, (a) failing to respond to Cooper's multiple requests for Blum's, Collins', and Blum Collins' individual availability for community claim workshop meeting events, (b) failing to

respond to Cooper's multiple requests for Blum's, Collins', and Blum Collins' funding of deposits required to reserve venues to host various community claim workshop events, (c) failing to remit expense reimbursement due Cooper as required, and (d) failing to remit compensation due Cooper when due.

81.     Instead, Blum, Collins, and Blum Collins ignored Cooper's communications requiring collaboration among the parties, abandoned the parties' duties and obligations owed Cooper, and have failed to pay Cooper's Invoice since August 31, 2019.

82.     Blum, Collins, and Blum Collins have failed or otherwise refused to provide a justifiable reason for their failure to live up to their contractual obligations.

83.     Cooper has suffered damages resulting from the breach, as well as pre-judgment and post-judgment interest.

84.     Pursuant to the parties' agreement, Plaintiff is entitled to payment of $768,602.60.

85.     Cooper demands judgment against Blum, Collins, and Blum Collins for damages, interest, and costs of suit.

## COUNT TWO

## BREACH OF IMPLIED GOOD FAITH AND FAIR DEALING

86.     Plaintiff repeats, as if stated verbatim, each of the foregoing allegations with the same force and effect as if fully set forth herein.

87.     Under Tennessee law, Blum, Collins, and Blum Collins were required to act in good faith and deal fairly with Cooper, including abiding by the terms of their agreement and ensuring that Cooper would be compensated in accordance with their terms for the agreed upon compensation and expense reimbursement.

88.     The purpose of the implied covenant of good faith and fair dealing is to protect the parties' reasonable expectations and the covenant requires the parties to perform under the contract of good faith.

89.     Cooper at all times complied with his contractual obligations and acted in good faith in relation thereto.

90.     Blum, Collins, and Blum Collins acted in bad faith when they began making efforts to repudiate the agreement and failed to compensate Cooper's professional fees or expenses.

91.     Blum, Collins, and Blum Collins acted in bad faith when they acknowledged $3,672.00 was due Cooper for his professional services in the Malibu Landlord Dispute and Calabasas Landlord Dispute civil

matters, but failed to compensate Cooper.

92.     Blum, Collins, and Blum Collins unfairly interfered with Cooper's reasonable expectation that Cooper would receive compensation due for his professional services and reimbursement for his expenses incurred for and on behalf of Blum, Collins, Blum Collins and their clients and prospective clients.

93.     The conduct of Blum, Collins, and Blum Collins is contrary to the reasonable expectations of Cooper under the parties' agreement.

94.     By reason of Blum's, Collins', and Blum Collins' breach of the implied covenant of good faith and fair dealing, Cooper has suffered damages in an amount to be determined at trial.

## COUNT THREE

## UNJUST ENRICHMENT

95.     Plaintiff repeats, as if stated verbatim, each of the foregoing allegations with the same force and effect as if fully set forth herein.

96.     Blum, Collins, and Blum Collins benefitted from their wrongful acts as alleged herein and it would be inequitable for them to be permitted to retain the benefit of Cooper's services, at Cooper's expense, without obligation to compensate Cooper for his professional services provided and expenses incurred.

97.     Cooper has exhausted any available administrative remedies.

98.     By reason of Blum's, Collins', and Blum Collins' failure to compensate Cooper for his professional services received and expenses incurred, the Defendants and each of them have been unjustly enriched.

99.     As a result of Blum's, Collins', and Blum Collins' conduct, as alleged herein, the Defendants and each of them should each make full restitution to Cooper in an amount to be determined at trial.

## COUNT FOUR

### QUANTUM MERUIT

100.    Plaintiff repeats, as if stated verbatim, each of the foregoing allegations with the same force and effect as if fully set forth herein.

101.    Under Tennessee law, an award for quantum meruit must be based on the reasonable value of the services based on the "customs and practices prevailing" in the kind of business involved.

102.    From January 1, 2019 until August 1, 2019, Cooper expended 1,094 hours of time fulfilling his obligations to the Defendants and each of them.  Cooper also incurred $27,522.60 of expenses for and on behalf of Blum, Collins, and Blum Collins, reduced by Blum Collins' expense retainer deposit of $25,000.00, leaving a balance of $2,522.60 due Cooper.

103. The Woolsey Fire mass tort civil litigation matter is a complex litigation matter, requiring Cooper's unique expertise handling catastrophic wildfire events and qualified risk management and insurance experience. Cooper is a court-qualified expert in risk management and insurance with more than thirty years of experience. Cooper has firsthand experience investigating and offering litigation consulting services in other wildfire mass tort civil actions at a similar hourly rate. Cooper brought his unique skill set requisite to perform the necessary professional services for Blum, Collins, Blum Collins, and their clients.

104. Cooper's engagement and responsibilities precluded him from accepting and/or working on other cases at various points during the parties' engagement.

105. Cooper's customary and historical hourly rate for clients during the engagement period was $675.00 per hour. Upon information and belief, these rates were customarily charged in the locality for similar services in complex litigation cases.

106. The settlements received by the clients of Blum Collins, and, by extension, the individual partner's compensation received Blum and Collins, respectively, through their partnership in Blum Collins, LLP, were excellent results.

107. Cooper accepted the Defendants' marketing services engagement on a contingency fee basis, with no guarantee that he would ever recover any fee sufficient to repay Cooper for his time and efforts expended or recover out-of-pocket expenses Cooper advanced on Blum's, Collins', and Blum Collins' behalves.

108. Cooper demands judgment against Blum, Collins, and Blum Collins, for damages, interest and costs of suit in an amount to be determined at trial.

## COUNT FIVE

## CONVERSION

109. Plaintiff repeats, as if stated verbatim, each of the foregoing allegations with the same force and effect as if fully set forth herein.

110. Blum, Collins, and Blum Collins devised a scheme to appropriate compensation and expense reimbursement due Cooper to their own use and benefit. For example, after months of receiving professional services from Cooper, numerous meetings and public engagements with Cooper, and delegating Cooper's collaboration with Blum, Collins, and Blum Collins, respectively, to Mr. Torbett for day-to-day work, Blum, Collins, and Blum Collins falsely represented that Cooper had never provided any services for Blum, Collins, or Blum Collins, flatly

contradicted by Cooper's extensive documentation, as well as the parties' course of dealings.

111. Blum, Collins, and Blum Collins exercised dominion over Cooper's compensation and expense reimbursement and never remitted to Cooper any compensation or expense reimbursement agreed upon.

112. Blum, Collins, and Blum Collins actively seek reimbursement from Cooper of Blum Collins' expense retainer deposit, in the amount of $25,000.00, alleging Cooper incurred no expenses for or on behalf of Blum, Collins, or Blum Collins, despite travel costs, meal expenses and other related expenditures known to Blum, Collins, and Mr. Torbett during each of their engagements with Cooper during the parties' seven-month relationship.

113. Blum, Collins, and Blum Collins did all of this in direct defiance of Cooper's contractual rights to compensation for professional services rendered and his expenses incurred on the Defendants' behalf.

114. By reason of Blum's, Collins', and Blum Collins' conversion of Cooper's compensation and expense reimbursement due, Cooper has suffered damages in an amount to be determined at trial.

115. Cooper demands judgment against each of the Defendants, jointly and severally, for damages, interest and costs of suit.

## COUNT SIX

## CIVIL CONSPIRACY

116. Plaintiff repeats, as if stated verbatim, each of the foregoing allegations with the same force and effect as if fully set forth herein.

117. Blum, Collins, and Blum Collins conspired and acted in concert or pursuant to a common design to deprive Cooper of his rightful compensation and expense reimbursement due. Alternatively, each of the Defendants gave substantial assistance and encouragement to the other for that purpose.

118. Defendants' common design -- to abandon Cooper in the middle of their business collaboration and to end all communications with Cooper while depriving him of compensation and expense reimbursement due -- was accomplished by their concerted action, including their false misrepresentations that Cooper had never provided any services or incurred any expenses for or on behalf of Blum, Collins, or Blum Collins.

119. Defendants' actions were made for an unlawful purpose, or a lawful purpose by unlawful means, and resulted in substantial financial injury to Cooper.

120. The Defendants, and each of them, aided and abetted each other Defendant in the breach of their agreement with Cooper, participated

36

in the conversion of Cooper's compensation and expense reimbursement for themselves, and participated in the inequitable conduct leading to Blum, Collins, and Blum Collins being unjustly enriched.

121. By reason of the Defendants' civil conspiracy, Cooper has suffered damages in an amount to be determined at trial.

122. Cooper demands judgment against each of the Defendants, jointly and severally, for damages, interest and costs of suit.

## VI. PRAYER FOR RELIEF

A. That Summons issue and the Defendants be required to answer, according to law.

B. That Plaintiff be awarded a judgment for damages against the Defendants in an amount to be determined at trial, plus pre-judgment and post-judgment interest.

C. That Plaintiff be awarded restitution for Defendants' unjust enrichment.

D. That Plaintiff be awarded costs and such other further relief as is necessary, just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Case 3:22-cv-00124-DCLC-JEM   Document 1   Filed 04/11/22   Page 37 of 38   PageID #: 37

Respectfully submitted on this 11th day of April, 2022.

_____
Erik Cooper
In Propria Persona
Post Office Box 1413
Gatlinburg, Tennessee  37738
Telephone:  (865) 438-0892
Facsimile:  (866) 486-0206
Email:  CooperErik@aol.com