UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| ERIK COOPER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 3:22-CV-00124-DCLC-JEM |
| | ) | |
| v. | ) | |
| | ) | |
| BLUM COLLINS, LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Erik Cooper filed this lawsuit alleging state-law contract claims [Doc. 1, ¶¶ 75–108] (Counts I–IV), conversion [*Id.* at ¶¶ 109–115] (Count V), and civil conspiracy [*Id.* at ¶¶ 116–122] (Count VI) against Defendants. Plaintiff later filed a Request to Take Judicial Notice [Doc. 40] of records in California state-court proceedings between the Parties. Defendants filed a Motion to Dismiss for Lack of Jurisdiction and Improper Venue under Federal Rules of Civil Procedure 12(b)(1)–(3) [Doc. 47], supported by affidavits of Defendants Blum and Collins [Docs. 49–50]. Plaintiff later moved to strike the Motion to Dismiss [Doc. 57] and filed a response including his own supporting affidavit [Doc. 58]. These motions have been extensively briefed [*see* Docs. 48, 58, 61–63, 68], and this matter is now ripe for resolution. For the reasons stated below, Plaintiff's Motion to Strike [Doc. 57] is **DENIED**. Defendants' Motion to Dismiss [Doc. 47] is **GRANTED**. The Complaint [Doc. 1] is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Request to Take Judicial Notice [Doc. 40] is **DENIED AS MOOT**.

1

## II. BACKGROUND

### A. Factual background

In late 2018, a wildfire, known as the "Woolsey Fire," tore through parts of Los Angeles and Ventura Counties in southern California [Doc. 1, ¶ 30]. It caused three deaths, hundreds of thousands of evacuations, billions of dollars of property damage, and the scorching of over a thousand structures [Doc. 1, ¶ 30]. Defendant Blum Collins, LLP, headed by Defendants Blum and Collins, filed a class action in Los Angeles County Superior Court about eleven days later [Doc. 1, ¶ 31]. As lawsuits proliferated, Blum Collins sought to become lead counsel for a consolidated class and sought outside help recruiting class plaintiffs [Doc. 1, ¶ 38].

A mutual associate connected Defendants Blum and Collins with Plaintiff Erik Cooper [Doc. 58-1, ¶ 28]. Cooper had experience providing litigation consulting services in the wake of wildfires [Doc. 58-1, ¶ 27], and the Parties met over breakfast in Los Angeles, California to discuss hiring Cooper [Doc. 58-1, ¶ 28]. Cooper is a self-described resident of Sevier County, Tennessee [Doc. 58-1, ¶ 12]. He maintains his primary residence in Gatlinburg and has resided continuously in Tennessee since at least 2013, with a stint residing in California immediately before that [Doc. 58-1, ¶ 13]. Although he travels out of state for work, he states that he has always intended to return to Tennessee [Doc. 58-1, ¶ 15]. His personal belongings have remained here, and he has no personal property licensed or registered in California [Doc. 58-1, ¶ 15]. He and his business have paid taxes to the state of Tennessee and the City of Gatlinburg, but he has not paid income tax to the state of California due to his "marginal" status as a potential part-year resident [Doc. 58-1, ¶¶ 16, 20, 25]. Cooper is a member of the Gatlinburg Chamber of Commerce and holds a Tennessee drivers' license [Doc. 58-1, ¶ 25]. Cooper and his company Acuity Consulting Services advertise an "East Coast Office" and a "West Coast Office" in Gatlinburg, Tennessee and Beverly Hills,

California respectively [Doc. 58-1, ¶ 41(g); Doc. 58-2, pg. 1], and Cooper himself retains both a Tennessee and California phone number which route to the same handset [Doc. 58-1, ¶ 22].

Following the Parties' initial meeting in Los Angeles, Cooper returned to Tennessee where he negotiated the terms of his engagement in phone calls and email exchanges with Blum and Collins, who remained in California [Doc. 58-1, ¶ 30]. The Parties reached a verbal agreement in December 2018 for at least some services [Doc. 58-1, ¶ 30]. After further negotiations, Cooper signed and emailed a written proposal which Collins later signed [Doc. 58-10, pgs. 31–32]. The proposal stated, "[t]his agreement is subject to the laws of the State of California" and included a dispute-resolution clause requiring arbitration in Los Angeles County, California [Doc. 58-10, pg. 32]. Blum Collins wired a retainer deposit to Acuity's bank account in Sevier County, Tennessee [Doc. 58-1, ¶ 36].

Over the following seven months, Cooper traveled to California at least eight times to meet with journalists, event space managers, potential plaintiffs, and Blum Collins and its associates [Doc. 58-4, pgs. 4, 12, 24, 30, 36, 40, 48, 59]. The aims of these meetings were to plan "Claim Workshop" events in Malibu and other affected areas of the Los Angeles region [Doc. 58-4, pg. 4], "prospect" clients for Blum Collins [Doc. 58-4, pg. 4], advertise Blum Collins in local publications [*see, e.g.*, Doc. 58-4, pg. 6], document losses to clients' properties for insurance claims to be filed [*see, e.g.*, Doc. 58-4, pgs. 8, 16], and persuade social media "influencers" to publicize Blum Collins' efforts [*see, e.g.*, Doc. 58-4, pg. 6]. Cooper's invoice names individuals Cooper interacted with for referral to Blum Collins for legal representation or to claims-adjusting company WorldClaim for insurance-claims processing. Prospective clients included Denise Richards [Doc. 58-4, pg. 4], Aaron Cameron Phypers [Doc. 58-4, pg. 12], Darshan Shah, M.D. [Doc. 58-4, pg. 4], Mauricio and Gladys Naranjo [Doc. 58-4, pg. 13], Henry Holmes [Doc. 58-4,

3

pg. 25], Gayle Ocheltree [Doc. 58-4, pg. 28], Ed and Ben Abbott [Doc. 58-4, pg. 32], James Weekly [Doc. 58-4, pg. 37], and Nikki Lafferty [Doc. 58-4, pg. 37]. Richards and Phypers owned rental properties in Malibu and Calabasas, California, and needed legal and insurance assistance with matters related to those properties [Doc. 58-4, pgs. 15–16]. The affidavit and invoice do not assert that any of these individuals resided in Tennessee. Instead, the invoice notes they were all, in fact, Californians. All the property of interest was in California [Doc. 58-4, pgs. 4, 15–16]. Cooper's invoice shows that he billed most of his hours working for Blum Collins while he was in California.[1]

Even when he was in Tennessee, Cooper continued to work on the California litigation. He teleconferenced and emailed regularly with Blum Collins attorneys in California [Doc. 58-4, pgs. 8–12, 19–24, 29–30, 33–36, 38–48, 52–59]. He met in Gatlinburg with Russell Heath, an employee of WorldClaim, to plan "Claim Workshops" in Malibu [Doc. 58-4, pg. 9].[2] Cooper reviewed communications from the City of Malibu and prospective Blum Collins clients concerning the fire's impacts [Doc. 58-4, pgs. 22, 35, 54, 61]. He drafted news articles and coordinated with Malibu journalists to publish them [Doc. 58-4, pgs. 11, 22–23, 39, 41–48, 52–

---

[1] Cooper claims that he "provided the majority of [his] claims consulting, litigation consulting, and marketing services for the Defendants from [his] Sevier County, Tennessee office" [Doc. 58-1, ¶ 35], yet his invoice to Defendants does not bear out this assertion [*See generally*, Doc. 58-4]. By the Court's estimate, he performed approximately 637 hours of work in California and 461 hours in Tennessee [*See id.*] (noting dates on which Cooper flew to and returned from California and detailing the hours he spent working while there). More importantly, the Court's diligent review of the invoice and other attached documents uncovered no evidence that "Cooper met with political leaders and business representatives . . . in Sevier County, Tennessee." [Doc. 1, ¶ 50]. Because Cooper has the burden to show this Court's personal jurisdiction over Defendants, he is obligated to produce evidence that his work for Blum Collins implicated Tennessee or Tennesseans. As explained further below, he fails to do so.

[2] WorldClaim is a public claims-adjusting company that helps clients prepare insurance claims [Doc 58-1, ¶ 28]. WorldClaim is not formally affiliated with Blum Collins. Although they at times collaborate, they do so pursuant to informal "partnership" [Doc. 58-4, pg. 5].

4

53, 55–59]. He attended City of Malibu town hall events remotely [Doc. 58-4, pg. 23, 36]. He communicated with California clients concerning issues with claims processing [Doc. 58-4, pg. 34]. He assisted in completing assessments of property damages for submission to the California courts [Doc. 58-4, pg. 54–56, 58].

After a handshake agreement renewing Cooper's engagement in June 2019 [Doc. 58-4, pg. 50], Blum and Collins stopped communicating with Cooper [Doc. 58-4, pg. 50; Doc. 58-11, pg. 82]. Cooper terminated the engagement on July 31, 2019, citing Blum Collins' abandonment, and sent a copy of his invoice [Doc. 58-11, pg. 88]. When he received no payment and heard nothing further from Blum Collins, he filed notices of liens in the Woolsey Fire cases pending in the California courts [Doc. 58-6, pg. 3]. Blum Collins responded with a letter demanding that Cooper withdraw the lien notices, refund the retainer deposits, and proceed to arbitration [Doc. 58-6, pgs. 3–5]. The Parties arbitrated at least portions of this dispute in California [Doc. 49-2, pgs. 5–6; Doc. 49-3, pgs. 1–31; Doc. 58-1, ¶¶ 41(m)–(n)]. The arbitrator issued Blum Collins an award for a refund of retainer deposits plus costs and no award to Cooper [Doc. 49-5, pg. 9].[3]

B.   **Relevant procedural history**

Cooper filed this lawsuit on April 11, 2022 [Doc. 1]. On May 5, he filed a Notice of Service of Process and attached affidavits [Doc. 7]. Defendants moved to dismiss for lack of jurisdiction, improper venue, and insufficient service of process [Doc. 13]. Cooper responded [Doc. 25] and moved to strike the motion for failure to comply with the Court's order governing motions to dismiss [Docs. 4, 20]. In support of the Motion to Strike, Cooper argued that Defendants failed to

---

[3]   The Court does not consider the further record evidence of California proceedings because they are irrelevant to subject matter jurisdiction and, for purposes of the Rule 12(b)(2) motion, do not appear in Cooper's affidavit and attached materials. Nonetheless, as explained further below, the facts recited here are sufficient to grant Defendants' motion.

5

meet and confer in good faith as required by the Court's order and that they failed to notify him of all the grounds on which they planned to move for dismissal [Doc. 20. pgs. 5–6]. The grounds Cooper claimed were not addressed in the Parties' conference were insufficient service and improper venue [Doc. 20, pg. 5]. Shortly thereafter, Cooper filed a Request for Judicial Notice and attached, among other things, California Superior Court filings alleging misconduct against one of that court's judges and the judge's order confirming the arbitration award [Doc 40-1. pgs. 2–17, 29–32].

Following a telephonic scheduling conference, the Court issued an order extending Cooper's time to serve Defendants and advising Defendants that failure to waive service could result in taxing costs of service to Defendants [Doc. 43]. The Court also noted Defendants' representations during the conference that they intended to refile their Motion to Dismiss to reflect the changed procedural posture of the case [*Id.* at pg. 2]. Defendants waived service [Doc. 44] and promptly refiled their motion [Doc. 47].

### III. LEGAL STANDARD

A Rule 12(b)(1) motion is construed as either a facial attack or a factual attack on subject-matter jurisdiction. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on jurisdiction "questions the sufficiency of the pleading" while a factual attack requires the Court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction exists or does not exist." *Id*. Here, Defendants' motion is a factual attack because it asserts that (1) Cooper's personal circumstances give rise to California citizenship, not Tennessee citizenship and (2) a $0 arbitration award outside the pleadings renders Cooper's claim valueless.

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears

6

the burden of establishing jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). If the motion to dismiss is supported by affidavits or other evidence, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). A court may decide the motion with or without an evidentiary hearing or permit discovery. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). If the court decides the motion on the affidavits alone, it must consider the record in the light most favorable to the Plaintiff, and the plaintiff must only make a *prima facie* showing of personal jurisdiction over the moving party. *Id.*

Here, the parties submitted affidavits supported by extensive documentary evidence [*See* Docs. 48, 58]. Although both parties requested an evidentiary hearing [*see* Doc. 48, pg. 13; Doc. 58, pg. 25], the Court finds that the record is complete, and a ruling is possible based solely on Cooper's submissions in support of his *prima facie* case.

IV.     **DISCUSSION**

A.      **Cooper's Motion to Strike**

Cooper argues that Defendants' Motion to Dismiss [Doc. 47] should be stricken because—he claims—Defendants failed to comply with the Court's order governing motions to dismiss [Doc. 4]. That order provides that parties must meet and confer before filing a motion to dismiss because conferences reduce the likelihood that parties will file a motion that could have been resolved by filing an amended pleading [Doc. 4]. Here, the Parties already conferred [Doc. 20, pgs. 4–5; Doc. 28, ¶ 2]. Cooper complains that some grounds for Defendants' first motion to dismiss were not addressed in that conference [Doc. 57, pg. 5]. But Defendants mooted their objection to service by waiving service [Doc. 44]. The purpose of the Court's order would not be

7

served by ordering the Parties to confer anew, and given the litigiousness displayed by the Parties thus far [*see, e.g.*, Docs. 52, 53, 56, 59], the Court finds that ordering a new conference would be a waste of time. Cooper's Motion to Strike [Doc. 57] is therefore **DENIED**.

**B.      Diversity jurisdiction**

Federal courts are courts of limited jurisdiction and can only act when authorized by statute or the Constitution. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010). Neither party invokes federal-question jurisdiction—instead, Cooper invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction is proper if the amount in controversy exceeds $75,000.00 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). Individuals are citizens where they are domiciled. *Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019). Domicile requires that a person be present in a state with the intent to make a permanent home there or without intent to make a home elsewhere. *Id.* (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)). Mere "residency" is not enough. *Id.* A person may have many residences, but only one domicile. *Eastman v. Univ. of Mich.*, 30 F.3d 670, 673 (6th Cir. 1994). A partnership, however, shares the citizenship of all its partners. *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016).

Here, the parties are diverse because Cooper is a citizen of Tennessee and Defendants are not. Cooper owns a home in Tennessee where his personal belongings have remained since at least 2013 [Doc. 58-1, ¶¶ 13, 15], and there is no indication in the record that he intends to abandon that home. He states under oath that since 2013, Tennessee is the place he has always intended to return to even when he is away [Doc. 58-1, ¶ 15]; *see Eastman*, 30 F.3d at 673 ("[Domicile] is the place to which [an individual] returns whenever he is absent.") (citations omitted) Cooper has a drivers' license in Tennessee [Doc. 58-1, ¶ 25], maintains membership in Tennessee professional

8

associations [Doc 58-1, ¶ 25], and pays personal and business taxes in Tennessee [Doc. 58-1, ¶¶ 16, 20, 25]. Although his cell phone and business letterhead bear marks of his Tennessee-California dual residency, [*see* Doc. 58-1 ¶¶ 22, 41(g); Doc. 58-2, pg. 1], Cooper has met his burden of showing that Tennessee is where he intends to make his permanent home. Blum and Collins, by contrast, have lived in California for decades, maintain drivers' licenses and law licenses there, and pay taxes there [Doc. 49, ¶ 2; Doc. 50, ¶ 2]. Moreover, they affirm that their partnership has never solicited business in Tennessee, nor are any of their attorneys admitted to practice in Tennessee [Doc. 49, ¶ 6; Doc. 50, ¶ 6].

Defendants point to numerous filings in this Court and others in which Cooper states that he is a "resident" of California and therefore, Defendants argue, not diverse from them [Doc. 48, pgs. 15–16]. These statements establish nothing about Cooper's domicile, however. Defendants point to Cooper's sworn statements in affidavits filed in the wildfire litigation in which he states that he is "a resident of Sevier County, Tennessee and Los Angeles County, California" [Docs. 6-1, pg. 2; Doc. 49-6, pgs. 2, 15]. But Cooper's partial residency in California does not establish his domicile there. *See Larson*, 930 F.3d at 765. In any event, because Cooper claims *dual* residency in these affidavits, they are unhelpful in locating his *one* state of domicile. *See Eastman*, 30 F.3d at 673. Defendants further highlight that Cooper listed a California address in his lawsuit for declaratory and injunctive relief against Defendants and filed a "temporary" change of address listing a Tennessee address [Doc. 49-7, pg. 1, Doc. 49-8]. Yet the record is replete with instances of Cooper's business travel between California and Tennessee [*See* Doc. 58-4, pgs. 4, 12, 24, 30, 36, 40, 48, 59]. Cooper's characterization of the change as "temporary" is consistent with his being frequently on the move. It does not defeat his presentation of substantial evidence that he intends that his permanent home remain in Tennessee.

Contrary to Defendants' arguments [Doc. 48, pgs. 17–18], the fact that Cooper received an arbitration award of $0 does not oust the Court of jurisdiction. When a plaintiff in good faith pleads an amount in controversy above the § 1332 cutoff, the requirement is satisfied unless there is a "legal certainty" that the plaintiff cannot exceed this jurisdictional amount. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–921 (2000). When plaintiffs complain they won too little in arbitration, the amount in controversy is the difference between what they claim they are entitled to and what they in fact won. *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 998–99 (6th Cir. 2020). Here, Cooper claims that he is entitled to at least $768,602.60 and that he won $0 [Doc. 1, ¶ 15; Doc. 49-5, pgs. 2–3]. The amount in controversy is therefore greater than $75,000.

Because the Parties are diverse and the amount in controversy exceeds $75,000, the Court has subject-matter jurisdiction. *See* 28 U.S.C. § 1332(a).

## C. Personal jurisdiction over Defendants

In a diversity case, personal jurisdiction exists only if authorized by state law and the federal Constitution's Due Process Clause. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Tennessee's long-arm statute extends to the limits of due process, so the Court need only assess constitutional limitations on its assertion of personal jurisdiction over Defendants. Tenn. Code Ann. § 20-2-214(6); *see Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

Personal jurisdiction may be general or specific. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Cooper's argument invokes both [*See* Doc. 58, pgs. 21–22] (arguing that Defendants gave "implied consent"[4] to personal jurisdiction, that they maintained "minimum contacts" with

---

[4] Cooper appears to invoke implied consent to mean specific jurisdiction, and in any event, implied consent furnishes no basis for personal jurisdiction over Defendants. The Supreme Court has "abandoned [implied] 'consent,' 'doing business,' and 'presence' as the standard for

10

Tennessee, and that their contact with Tennessee was "continuous" and "systematic").

Specific personal jurisdiction exists if a defendant has established sufficient minimum contacts with the forum state to render jurisdiction consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The Sixth Circuit applies the *Mohasco* test, which requires that (1) the defendant purposefully avail itself of the forum, (2) the dispute arise from the defendant's forum-directed activities, and (3) the defendants' acts or consequences of those acts be closely connected with the forum state such that the forum's exercise of jurisdiction is reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The purposeful availment requirement guards against a faraway court's assertion of jurisdiction based only on "random, fortuitous, or attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted).

In a contract case like this one, the purposeful availment requirement is satisfied if the contract creates a "continuing relationship" between an in-state plaintiff and out-of-state defendant. *Burger King*, 471 U.S. at 473. But the Supreme Court cautions that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement," nor can the mere existence of a contract with a nonresident. *Id.* at 474, 478 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A contract establishes purposeful availment only if "prior negotiations and anticipated future consequences" implicate the forum state. *Id.* at 479. An out-of-state forum-selection clause or choice-of-law provision undercuts purposeful availment

---

measuring the extent of state judicial power . . . " over business entities. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945). Under this old regime, a corporation could "consent" to suit in a jurisdiction by appointing an agent for service of process as required by statute in states where the corporation did business. *See Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 617–18 (1990) (plurality opinion). The Supreme Court "cast . . . aside" this fictitious notion of consent in favor of the minimum contacts test of *International Shoe*. *Id.*

of the forum state. *See Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 396 (6th Cir. 1997).

Here, documentary evidence submitted by Cooper undermines his required *prima facie* case that the parties contemplated a "continuing relationship." *Cf. Burger King*, 471 U.S. at 473. The parties' agreement is a "Proposal" for services with a term of only six months, with the possibility of a six-month extension, governed by California law and subject to California arbitration [Doc. 58-10, pg. 32]. Moreover, there is no indication that the relationship would last for the duration of the wildfire litigation or survive its resolution. *Cf. id.* at 479–80 (holding that Florida could exert jurisdiction over a restaurant franchisee who licensed franchisor's trademarks, submitted to "exacting regulation" from franchisor's Florida headquarters, anticipated a 20-year relationship operating the franchise, and stood to benefit from association with a nationwide organization). Despite the parties' "handshake agreement" to extend Cooper's engagement, there is no indication that the terms of that extension were different from those in the Proposal, nor that the Parties contemplated a more substantial relationship [Doc 58-4, pg. 50].

Moreover, although the agreement required Cooper to provide extensive, time-consuming services to Defendants, sometimes from his home base in Tennessee, that work was directed entirely at out-of-state parties and bore no connection to Tennessee. All Cooper's communications, except a handful of meetings with Russell Heath, addressed lawyers, clients, and journalists located in California for the purpose of supporting California lawyers' prosecution of a California lawsuit. In a typical period based in Tennessee in April 2019, Cooper "receive[d] and review[ed] email correspondence from client Denise Richards" which he forwarded to Blum Collins attorneys [Doc. 58-4, pg. 34], emailed and teleconferenced with Blum Collins [*id.*], communicated with clients about issues with WorldClaim [*id.*], reviewed email from the City of

12

Malibu regarding fire recovery, [*id*. at 34–35] and remoted into a Malibu town-hall event [*id*. at 36]. Later, in early May, he spent nearly all his time in Tennessee communicating with Malibu journalists and some national outlets about the Woolsey Fire [*id*. at 38–40]. In sum, review of the invoice reveals that even when based in Tennessee, Cooper's relationship with Blum Collins had only the most attenuated connection with this state. Instead, the anticipated future consequences of the Parties' agreement would be felt exclusively in California. Cooper argues that he "negotiated" from Tennessee, but there is no indication that Defendants "reached out" to him in Tennessee to form any agreement. *Cf. Burger King*, 471 U.S. at 473. Instead, Cooper reached out to them in California by agreeing to provide his services in support of their California-based litigation efforts.

Cooper resists this conclusion in his affidavit stating that he "provided the majority of [his] claims consulting, litigation consulting, and marketing services for the Defendants from [his] Sevier County, Tennessee office" [Doc. 58-1, ⁋ 35]. As an initial matter, the documentary evidence submitted by Cooper appears to undercut this factual assertion [*See generally* Doc. 58-4; footnote 1, *supra*]. In any event, personal jurisdiction rests on the nature, not number, of the defendant's forum contacts. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989). As explained above, the nature of the parties' relationship was a contract for services affecting only California litigation and California clients. Even supposing Cooper had chosen to provide most of his services while located in Tennessee, his choice was "unilateral activity" that cannot confer personal jurisdiction. *Burger King*, 471 U.S. at 474. He fails to make a *prima facie* showing that Defendants purposefully availed themselves of this forum.

In a factually similar case, a Michigan engineering firm agreed to design a glass manufacturing plant in France for a Swiss company. *Euroglas*, 107 F.3d at 388. The engineering

13

firm's president met with the manufacturing company's chairman in Germany to discuss the project, and shortly thereafter, the manufacturer started sending payments to Michigan. *Id.* The contract provided for a limited term with possible extensions and dispute resolution in Switzerland governed by Swiss law. *Id.* When the parties' relationship broke down, the manufacturer refused to return the firm's designs, arguing that it had already paid for them and that the contract did not require their return. *Id.* at 390. The Sixth Circuit held that a Michigan district court could not exercise jurisdiction over the manufacturer in the firm's lawsuit because the Swiss choice-of-law clause suggested a lack of purposeful availment of Michigan's laws, the conduct complained of occurred in Switzerland, and the defendants were not American. *Id.* at 393–94. Although the firm developed its intellectual property in Michigan, the property "had no situs" there. *Id.* at 394. The Court discounted a Michigan visit by the manufacturer's chairman and telephone, letter, and fax communications with the firm because these contacts were fortuitous conveniences to the firm. *Id.* at 395.

Here, like the engineering firm in *Euroglas*, Cooper offered his services to out-of-state defendants in a meeting on the defendants' turf [Doc. 58-1, ¶ 28]. Additionally, the only document evidencing the Parties' agreement provides for dispute resolution in the defendants' home jurisdiction under that jurisdiction's laws, just like the *Euroglas* contract. Although foreign-policy considerations do not apply to the American defendants in this case, *cf. Euroglas*, 107 F.3d at 394, Defendants are certainly not local, and none of Cooper's work for them had anything to do with Tennessee.

The only Tennessee contacts of Defendants that Cooper can point to are his occasional presence in Tennessee as their service provider [Doc. 58-4, pgs. 8–12, 19–24, 29–30, 33–36, 38–48, 52–59], his meetings with Heath in Gatlinburg [Doc. 58-4, pg. 9], and Defendants' act of wiring

14

a retainer deposit to Cooper's Tennessee business bank account [Doc. 58-1, ¶ 36]. Yet Cooper's presence in Tennessee was fortuitous. Defendants were indifferent as to where Cooper performed his work, so long as his activities supported their recruitment of class plaintiffs in California. Moreover, unlike the chairman in *Euroglas*, Heath was not Defendants' employee and therefore was at best an "associate" of Defendants, not their fiduciary [*See* Doc. 58-1, ¶ 28]. If an agent does not purposely avail the organization of the forum simply through business visits for the plaintiff's convenience, then *a fortiori* neither does a mere associate. Cooper offers no basis for distinguishing the retainer deposit, teleconferences, phone calls, and emails he received from Blum Collins attorneys from the payments, calls, letters, and faxes in *Euroglas*. The mere fact that the defendants knew the plaintiff's residence did not suffice in that case, and it is not enough here.

Although Defendants lack minimum contacts with Tennessee sufficient to support specific jurisdiction, general jurisdiction permits the Court to consider Defendants' contacts with Tennessee which, though unrelated to the present dispute, are "so continuous and systematic as to render them essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (internal quotations omitted). Cooper has shown no such contacts. There is no evidence in the record of any Tennessee contacts of Defendants other than those related to the present dispute. Defendants were complete strangers to Tennessee until January 2019 when they hired Cooper, and any connection with this state ceased at the end of Cooper's engagement [*See* Doc. 58-4, pgs. 3, 61]. *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding that chief executive's trip to Texas to negotiate agreements and acceptance of checks drawn from a Texas bank were insufficient to establish general jurisdiction over a foreign company). Defendants' contacts are not "continuous" or "systematic" and Defendants are not "at home" in Tennessee, so the Court cannot exercise general personal jurisdiction over them.

15

Because the Court lacks personal jurisdiction over Defendants, Cooper's complaint is **DISMISSED WITHOUT PREJUDICE**.[5]

### D. Cooper's Request for Judicial Notice

In concluding that Cooper's Complaint must be dismissed, the Court does not rely on the extensive records of California litigation between the Parties supplied in Cooper's Request for Judicial Notice [Doc. 40]. The materials document arbitration between the Parties and alleged misconduct of a California judge in confirming the arbitration award [Doc 40-1. pgs. 2–17, 20–21, 29–32]. The only discernable purpose for offering this evidence is to vacate the award, *see* 9 U.S.C. § 10(a), and to preempt Defendants' likely *res judicata* defense.[6] These materials address merits issues and are irrelevant to Cooper's *prima facie* case for this Court's jurisdiction. Because the Court lacks jurisdiction, consideration of the merits is inappropriate. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998) (requiring "without exception" that a court establish its own jurisdiction before addressing the merits) (citations omitted). Accordingly, Cooper's Request for Judicial Notice [Doc. 40] is **DENIED AS MOOT**.

### V. CONCLUSION

For these reasons, Plaintiff's Motion to Strike [Doc. 57] is **DENIED**. Defendants' Motion to Dismiss [Doc. 47] is **GRANTED**. The Complaint [Doc. 1] is **DISMISSED WITHOUT**

---

[5] Because the Court lacks personal jurisdiction, discussion of venue is pretermitted.

[6] Defendants assert *res judicata* in support of their position that this Court lacks subject-matter jurisdiction [Doc. 48, pgs. 18–20]. Claim and issue preclusion are affirmative defenses that a defendant must raise in its answer. *See* Fed.R.Civ.P. 8(c); *McCormick v. Braverman*, 451 F.3d 382, 396 (6th Cir. 2006); *Capitani v. World of Miniature Bears, Inc.*, 552 F. Supp. 3d 781, 793 (M.D. Tenn. 2021); *see also DP Marina, LLC v. City of Chattanooga*, 41 F. Supp. 3d 682, 687 (E.D. Tenn. 2014) ("[T]he party urging [res judicata] carries the burden of proof with respect to factual contentions that underlie the defense."). *Res judicata* therefore goes to the merits, not jurisdiction.

**PREJUDICE**. Plaintiff's Request to Take Judicial Notice [Doc. 40] is **DENIED AS MOOT**.

**SO ORDERED:**

s/Clifton L. Corker  
United States District Judge